**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Karen T.,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Civ. A. No. 3:20-cv-16851 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Karen T.'s[1] ("Plaintiff") appeal from the final decision of the Commissioner of the Social Security Administration ("Defendant" or the "Commissioner"), denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C § 423, *et seq.*  The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision to deny Plaintiff social security benefits.

**I.　　BACKGROUND**

　　**A.　　Procedural History**

Plaintiff filed an application for disability insurance benefits on April 12, 2018, alleging an onset date of March 28, 2018.  (Administrative Record ("AR") 17, 37-38, 59).  Plaintiff's claim

---

[1] The Court identifies Plaintiff by first name and last initial pursuant to D.N.J. Standing Order 2021-10.

was denied initially on July 31, 2018, and again upon reconsideration on November 2, 2018. (*Id.* at 97-98.) Administrative Law Judge ("ALJ"), Ricardy Damille, conducted an Administrative Hearing (the "Hearing") on November 22, 2019, following which the ALJ issued a decision on January 29, 2020, finding that Plaintiff was not disabled. (*Id.* at 15-27.) The Appeals Council denied Plaintiff's request for review on October 18, 2020. (*Id.* at 1-6.) On November 22, 2020, Plaintiff filed this appeal in the District Court for the District of New Jersey. (*See* Compl., ECF No. 1.) The Commissioner filed the Administrative Record on April 15, 2021. (*See* ECF No. 6.) Plaintiff filed her moving brief on June 29, 2021, pursuant to Local Civil Rule 9.1. (*See* Pl.'s Br. in Supp., ECF No. 10.) The Commissioner filed opposition on September 27, 2021 (*see* Def.'s Br. in Opp'n, ECF No. 15), and on October 30, 2021, Plaintiff filed her reply (*see* Pl.'s Reply, ECF No. 18).

**B.     Factual Background**

At the time of the Hearing, Plaintiff was a fifty-eight (58) year-old female. (AR 39.) Plaintiff completed the 12th grade of high school, but does not have a college degree. (*Id.* at 40.) She served as a merchandise expeditor at a bookstore from 1999 until she was laid off in 2018. (*Id.*) Plaintiff filed her initial claim for disability alleging an onset date beginning March 28, 2018. (*Id.* at 150-56.) Plaintiff has received treatment for various conditions, including: fibromyalgia, asthma, history of lumbar spinal stenosis, arthritis, acid reflux, irritable bowel syndrome, Crohn's Disease, endometriosis, carpel tunnel, depression, and anxiety. (*Id.* at 37-38.) Plaintiff is prescribed Ranitidine, Tramadol, Lorazepam, Lomotil, Sulfasalazine, and medical marijuana for her conditions. (*Id.* at 289.)

At the Administrative Hearing, conducted on November 22, 2019, Plaintiff testified that had she not been laid off, she would have had difficulty continuing to work because the department

she was assigned to was located far from her car and her office only had one bathroom. (*Id.* at 40.) Because of her Crohn's Disease, Plaintiff had to "make a plan where I would go to the IT department's bathroom … so I would go across the warehouse and use that bathroom because I would have privacy." (*Id.* at 41.)

Plaintiff testified that she is unable to stand for forty (40) hours per week as she could only stand for about five minutes at a time. (*Id.* at 44.) She maintained that she struggles to walk long distances. (*Id.*) She stated that she has constant pain in her neck and back, such that at times the condition requires her husband to driver her to work because she took painkillers for the pain. (*Id.* at 46.) Plaintiff testified that her husband assists her with some daily activities like doing dishes, getting groceries, laundry, vacuuming, mopping the floors, and walking the dog. (*Id.* at 48.) She also testified that she has suffered from panic attacks since her late thirties. (*Id.* at 49.) Plaintiff stated that her anxiety has been high since being laid off, but that therapy and antidepressants help. (*Id.* at 50.)

The record contains Plaintiff's medical records. (*See generally id.*) During visits to Dr. Jason Grossman, DPM ("Dr. Grossman") in April, May, and June 2018, Plaintiff denied suffering from depression, disorientation, and memory loss. (*Id.* at 702, 705, 712.) Dr. Elissa Koplik, Ph. D ("Dr. Koplik"), stated in June 2018 that Plaintiff "has made tremendous progress in reducing symptoms of anxiety and depression over the course of many years," but Plaintiff "would benefit from working from home or part-time in a low-stress environment so as not to exacerbate the symptoms of her Crohn's Disease and chronic pain." (*Id.* at 396.) Dr. Koplik acknowledges that her suggestion is based on an analysis of both Plaintiff's mental and physical impairments, but only listed a physical impairment as the reason why Plaintiff should work from home or part-time. (*Id.*) Also in June 2018, Dr. AnnaMarie Resnikoff, Ph.D. ("Dr. Resnikoff") highlighted that upon

3

examination Plaintiff exhibited "Good attention and concentration skills . . ." but "pain interferes with her ability to stay focused. . . ." (*Id.* at 401-402.) Finally, State Agency consultants stated: "[Plaintiff's] statement concerning the intensity, persistence and limiting effect of symptoms and limitations regarding the [Plaintiff's] mental condition, are not entirely consistent with . . . other evidence in the record." (*Id.* at 64.)

The ALJ engaged the expertise of Vocational Expert (the "VE"), Mary D. Anderson, who testified that an individual with Plaintiff's restrictions could perform sedentary work[2] while being off task 10% of the workday above normal breaks due to bathroom breaks in regards to her past work as a merchandise expeditor. [DOT Code 222.367-018, sedentary, SVP 6] (AR 49-53.) However, the VE stated the job would not remain if the percent of the workday off task was increased to 15%. (*Id.* at 53.)

C. **The ALJ's Decision**

On January 29, 2020, the ALJ issued his decision finding that Plaintiff is not disabled. (*Id.* at 15-27.) The ALJ found that Plaintiff met the insured status requirements under the Social Security Act through December 31, 2023. (*Id.* at 17.) The ALJ then set forth the Social Security Administration's ("SSA") five-step sequential process for determining whether an individual is

---

[2] The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." Accordingly, "sedentary work"

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

4

disabled. (*Id.* at 13-14.) At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity[3] since March 28, 2018, the alleged disability onset date. (*Id.* at 17.) At step two of the analysis, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, history of lumbar spinal stenosis, arthritis, and Crohn's disease. (*Id.*) The ALJ found the following impairments non-severe: neuroma, asthma, acid reflux, endometriosis, carpel tunnel, depression, and anxiety. (*Id.* at 18-19.)

At step three, the ALJ determined, after a comprehensive examination of Plaintiff's medical conditions, that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter, "Appendix 1"). (*Id.* at 20.) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to perform sedentary work with detailed limitations.[4] (*Id.*) At step four, the ALJ found Plaintiff capable of performing past relevant work as an expeditor. (*Id.* at 26.) The ALJ, accordingly, found that Plaintiff had not been disabled from March 28, 2018, through the date of the decision. (*Id.* at 27.)

---

[3] "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* § (a). "Gainful work activity is work activity that the claimant do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § (b).

[4] The ALJ stated that Plaintiff's limitations include: "claimant can occasionally push and/or pull with the bilateral upper extremities. The claimant can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch but never crawl. The claimant can frequently handle with the hands. Due to a need for restroom breaks, the claimant would need to be off task for 10% of the workday above normal breaks. The claimant would be absent one day per month. The claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. The claimant must avoid all exposure to hazards such as machinery and heights." (AR 21.)

## II.  LEGAL STANDARD

### A.  Disability Determination

An individual is "disabled" and therefore eligible for disability insurance benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  The individual's impairment must be severe to the point that the individual cannot engage in his previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).  A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner of the SSA for the fifth step.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 404.1520(a)(4)(i), (b).  Second, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii).  The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least

twelve months. *Id.*; *id.* at § 404.1509. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either of the first two requirements automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies her burden at steps one and two, she proceeds to the third step. At step three, the Commissioner considers the "medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* § 404.1520(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If the claimant is able to make a sufficient showing at step three, she is deemed disabled. *Id.* § 404.1520(a)(iii).

However, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work at the fourth step. *Id.* § 404.1520(a)(4)(iv). RFC is the most the claimant can do in a work setting despite her limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [her] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 4041520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

If the claimant is incapable of performing her past relevant work, the analysis proceeds to the fifth and final step. *See id.* § 404.1520(a)(4)(iv)-(v); *Plummer*, 186 F.3d at 428. At step five, the claimant must be unable to adjust to other work in light of her RFC, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see also Poulos*, 474 F.3d at 92.

## B.  Standard of Review

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence. *See id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, this limitation on a reviewing court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429,

8

431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

### III.   DISCUSSION

Based on the Court's review of the ALJ's decision (*see* AR 15-27), and the Administrative Record submitted by the Commissioner (*see generally* AR), the Court finds good cause to affirm the Commissioner's finding that Plaintiff is not disabled. Notably, in reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706. Here, the ALJ provided sufficient reasoning for the Court to determine that his findings are supported by substantial evidence.

In support of her appeal, Plaintiff advances two principal arguments why the ALJ's decision should be reversed: (1) "the ALJ committed a reversible and harmful error of law by failing to account at step four for the impact of a mild mental limitation on Plaintiff's ability to return to her skilled PRW as an expediter" (*see* Pl.'s Br. in Supp. 3-9) and (2) the appointment of the commissioner of the Social Security Administration violates the United States Constitution because the Commissioner can only be removed for cause and serves a longer term than the President (*see id.* at 10-12). The Court will address these arguments in turn.

####   A.   Plaintiff's Mild Mental Limitation

Plaintiff argues that the ALJ erred by failing to consider the impact of Plaintiff's mild mental limitation when evaluating whether Plaintiff could return to her prior relevant work. (*Id.* at 3-9.) Specifically, Plaintiff claims the ALJ should have asked the VE a hypothetical that included Plaintiff's alleged non-severe mental impairments. Plaintiff must demonstrate the

9

existence of a medically determinable impairment, however, by objective medical evidence. Under federal regulations, a medically determinable impairment

> must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. **[The Social Security Administration] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).**  After [the Social Security Administration] establish[es] if [the claimant] has a medically determinable impairment(s), then [its officials] determine whether [the claimant's] impairment(s) is severe.

20 C.F.R. § 404.1521 (emphasis added); *see* 42 U.S.C. § 423(d)(3).  "Objective medical evidence means signs,[5] laboratory findings,[6] or both." 20 C.F.R. § 404.1502(f).

---

[5] According to the regulations, "signs"

> means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. § 404.1502(g).

[6] The regulations define "laboratory findings" as

> [o]ne or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests.

20 C.F.R. § 404.1502(c).

The ALJ is instructed to use the "special technique" designed for the evaluation of mental impairments, outlined in the regulations, to first determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). To do this, the ALJ must "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings." *Id.* (citing 20 C.F.R. § 404.1521). If this evaluation shows that the claimant has a medically determinable mental impairment, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the] findings in accordance with paragraph (e) of this section," *see id.*, and "incorporate the pertinent findings and conclusions based on the technique" into the written decision, *see id.* § (e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." *Id.* According to paragraph (c), there are "four broad functional areas in which [the ALJ] will rate the degree of [the claimant's] functional limitation: [u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* § (c)(3) (citing 12.00E of the Listing of Impairments in Appendix 1).

While Plaintiff argues that the ALJ erred during the ALJ's hypothetical to the VE, it can be construed as an attack on the mental RFC as well. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (stating "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself."). The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR 21.) Additionally, the ALJ

11

examined Plaintiff's mental conditions in accordance with the mechanism designed for evaluation of mental impairments outlined by the regulations.

Notably, the ALJ engaged with the factors outlined by the regulations and noted that the "totality of the evidence shows that the claimant has no more than mild limitations in understanding, remembering and applying information, interacting with others, concentrating, persisting and maintaining pace and adapting and managing oneself." (*Id.*) The ALJ also noted that Plaintiff denied "depression, disorientation, and memory loss" upon her examination with Dr. Grossman. (*Id.* at 705, 712.) Furthermore, Dr. Koplik stated that Plaintiff "has made tremendous progress in reducing symptoms of anxiety and depression over the course of many years" but Plaintiff "would benefit from working from home or part-time in a low-stress environment so as not to exacerbate the symptoms of her Crohn's Disease and Chronic Pain." (*Id.* at 396.) Dr. Koplik arrived at this suggested work limitation after evaluating both Plaintiff's mental and physical impairments. (*Id.*) However, Dr. Koplik omits any mention of mental limitations as her basis for suggesting Plaintiff work from home or part-time. (*See id.*) Additionally, the ALJ used the evaluation of Dr. Resnikoff when arriving at the RFC conclusion. (AR 19.) Specifically, the ALJ stated, "Ann[a][]Marie Resnikoff, Ph.D. noted that the claimant has no more than mild limitations in mental functioning which would not significantly interfere with her functional abilities on a daily basis." (*Id.*) Finally, the ALJ noted the opinions of the State Agency consultants who stated: "[Plaintiff's] statement concerning the intensity, persistence and limiting effect of symptoms and limitations regarding the [Plaintiff's] mental condition, are not entirely consistent with . . . other evidence in the record." (*Id.* at 64.)

As a result, the ALJ found Plaintiff's statements about her symptoms to be inconsistent. Specifically, the ALJ stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence does not support the claimant's contentions to the degree alleged. Pursuant to 16-3p, and in consideration of the objective medical evidence which can reasonably produce the alleged symptoms, such as pain, the claimant's alleged daily activities are not entirely consistent with the claimant's allegation of disabling physical and mental symptoms and limitations….
>
> The objective evidence reflects that the claimant is not as limited as alleged, as the claimant's symptoms outweigh the objective findings in evidence and are supportive of the reduced range of sedentary exertion with additional postural, environmental and non-exertional restrictions to accommodate the claimant's combined impairments.

(AR 22-23.) Therefore, the Court finds that the ALJ did not err in his RFC conclusion by finding that Plaintiff's mental limitations are non-severe, and therefore does not find the ALJ's RFC finding to be erroneous.

Next, the Court must evaluate whether the ALJ erred by failing to include Plaintiff's mild mental limitations in the hypothetical to the VE. As explained earlier, if the ALJ finds that the degree of Plaintiff's limitation is "none" or "mild," he will generally conclude that it is nonsevere. 20 C.F.R. § 404.1520a(d)(1). The regulations instruct that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). Further,

> [t]his Circuit does not require an ALJ to submit to the VE every impairment alleged by a claimant. Rather, the ALJ is only required to submit credibly established limitations. Where, as here, a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE.

*Zirnsak*, 777 F.3d at 615 (3d Cir. 2014) (quoting *Rutherford*, 399 F.3d at 554) (internal punctuation omitted). *Zirnsak* applies here, and therefore, the Court will not apply its own judgment for that of the ALJ. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 552. The hypothetical posed to the VE was not deficient because the ALJ exercised its discretion in declining to incorporate

13

Plaintiff's alleged mental limitations, because Plaintiff's subjective symptoms are contradicted by other evidence in the record.

Plaintiff cites a line of cases where prior ALJ decisions were remanded because the various ALJ's did not include mild mental limitations in their hypothetical questions to the VE. *See e.g.*, *Curry v. Comm'r of Soc. Sec.*, Civ. No. 1:15-07515, 2017 U.S. Dist. LEXIS 29798, at *11 (D.N.J. Mar. 2, 2017); *Balla v. Comm'r of Soc. Sec.*, Civ. No. 18-00386, 2019 U.S. Dist. LEXIS 99979, at *8 (D.N.J. June 13, 2019); *Gibson v. Comm'r of Soc. Sec.*, Civ. No. 17-6507, 2018 U.S. Dist. LEXIS 217918, at *10 (D.N.J. Dec. 21, 2018). However, these cases are not directly on-point. Here, the ALJ was presented with some evidence that Plaintiff had suffered from anxiety and depression. However, other evidence in the record stated that Plaintiff's anxiety and depression did not impact her daily life. (*See e.g.*, AR 19, 401-402.) The ALJ was left to make a determination as to which testimony he found more credible, and the Court is not free to reweigh the evidence presented to the ALJ. *See Rutherford*, 399 F.3d at 552. Here, as noted above, the ALJ found that Plaintiff's alleged mental limitations were not as severe as alleged and inconsistent with medical records. (AR 22-23.) As a result, following *Zirnsak*, which is binding precedent on this Court, the ALJ appropriately withheld asking the VE a hypothetical that included Plaintiff's minor mental impairments. 777 F.3d at 615. For these reasons, the Court will affirm the ALJ's findings concerning Plaintiff's mental impairments.

### B. Plaintiff's Constitutional Argument Does Not Warrant Remand

Plaintiff asserts that the Commissioner's decision denying Plaintiff disability benefits should be reversed because the SSA's structure is constitutionally invalid. (Pl.'s Br. in Supp. 10.) Under 42 U.S.C. § 902(a)(3), the Commissioner of the SSA "shall be appointed for a term of 6 years" and can only be removed for cause. Plaintiff asserts that it is unconstitutional for "an

executive agency to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause." (*Id.* (citing *Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (Jun. 20, 2020).) The Commissioner argues that Plaintiff's Separation of Powers claim must fail because Plaintiff cannot show the SSA's structure alone caused her "compensable harm." (Def.'s Opp'n Br. 15 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021).) The Court rejects Plaintiff's argument.

To reverse the Commissioner's decision denying Plaintiff disability benefits for a constitutional violation, Plaintiff must show how the alleged constitutionally invalid structure of the SSA negatively impacted the proceedings below. *See e.g.*, *Mor v. Kijakazi*, Civ. No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) (stating "there must be an adequate nexus between the unconstitutional provision and the action at issue"); *Kwasnik v. Kijakazi*, Civ. No. 3:21-08573, 2022 WL 2358424, at *11 (D.N.J. June 30, 2022) (stating "Plaintiff fails to argue a valid nexus between the unconstitutional removal restriction and Plaintiff's injuries"); *Lawrence W.*, 2022 WL 16555246, at *5 (stating "Under *Collins*, [Plaintiff] must show a distinct injury connected to the removal statute found unconstitutional by *Seila Law*."); *Metzger v. Kijakazi*, Civ. No. 21-1798, 2022 WL 17324620, at *12 (E.D. Pa. Nov. 29, 2022) ("Notably, post-*Collins*, all the courts in this circuit that have considered such separation of powers arguments as the one raised here by Plaintiff have agreed, citing *Collins*, that they do not warrant remand.") (collecting cases). Meaning, Plaintiff "must show that the removal restriction was the cause of the harm he suffered." *Metzger*, Civ. No. 21-1798, 2022 WL 17324620, at *12 (citing *Collins,* 141 S. Ct. at 1781, 1789).

Here, the alleged unconstitutional structure of the SSA did not deprive Plaintiff "of a valid administrative adjudicatory process." (Pl.'s Br. in Supp. 10.) First, the ALJ held office under an appointment legally ratified by then-Acting Commissioner Berryhill, which is not contested by

15

Plaintiff.  *See Mor*, Civ. No. 21-1730, 2022 WL 73510, at *5; (Def.'s Br. in Opp'n 13).  Then-Acting Commissioner Berryhill could have been terminated at will by the President.  *See* 42 U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. 1783 (noting that the President generally holds the power to remove at will executive officers unless the "plain language" of a relevant statute takes that power away).  Second, following *Collins*, Plaintiff fails to show a distinct injury that is directly related to the constitutional defect Plaintiff complains of.  *Collins*, 141 S. Ct. 1781.  Specifically, Plaintiff fails to show that the removal restriction in 42 U.S.C. § 902(a)(3) directly caused the denial of her disability benefits claim.  Without Plaintiff showing a nexus between an injury and the alleged constitutional defect of the SSA, under *Collins*, the Court may not reverse the Commissioner's decision.  *Id.* at 1781, 1789.  Accordingly, remand is not warranted.

### IV. CONCLUSION

For the foregoing reasons, and for good cause shown, the Commissioner's decision to deny Plaintiff benefits shall be **AFFIRMED**.  An appropriate Order follows.

**Dated**: February 22, 2022

*s/Georgette Castner*
**GEORGETTE CASTNER**
**United States District Judge**